LOUIS F. THERASSON and JOHN A. BRYAN *v.* GEORGE F. PETERSON and GEORGE S. HUMPHREY.

A partnership firm in embarrassed circumstances—afterward found to be insolvent—after conference with a few of their leading creditors, signed a writing, suggested and drawn up by one of the creditors present at the conference; *proposing*, upon condition of a release from their indebtedness, to assign all their partnership effects to three of the creditors named, in trust to be converted into money and divided *pro rata* among all their creditors; reserving, however, $1,000 for each partner, unconditionally, to pay personal debts and expenses.

An acceptance of the proposal, also drawn by one of the creditors, was signed by all the principal creditors of the firm.

An assignment was duly executed according to the terms of the proposal and acceptance, and the assignees took possession and executed their trust. There was realized from the assets only sufficient to pay about thirty cents on a dollar of the firm's indebtedness.

The plaintiffs in this action were creditors of the firm, and signed the acceptance, but refused to accept their *pro rata* dividend, and brought suit against the firm to recover their debt, alleging fraud in procuring the release.

At the trial, this question of fraud was submitted to the jury under instructions by the court, and they found for the defendants.

*Held,* that the submission of the question of fraud to the jury was not error, and their verdict on that point was conclusive.

*Held, further,* that the transaction was good, as an accord and satisfaction, between the parties to it.

It seems it was not necessary that the creditors should accept the *assignment;* that the debtor having done all that the creditors agreed to accept in satisfaction of their claims, the accord was sufficiently executed.

APPEAL from judgment of Supreme Court. The action was brought on a promissory note, made by defendants, February 9, 1857, payable to plaintiffs' order six months after date. The answer set up a release and discharge of the indebtedness for which the note was given.

The cause was tried at the New York Circuit, in December, 1858, before Mr. Justice JAMES and a jury. On the trial it appeared that, in the latter part of February, 1857, the defendants, who were carpet dealers in New York,

became insolvent. They were indebted, at the time, to the extent of about $80,000, and their assets consisted of a stock of goods and a large amount of book accounts, the real value of both of which was uncertain. The defendant Humphrey disclosed to a Mr. Bliss, one of their principal creditors, the condition of the firm, and Mr. Bliss communicated with a Mr. Haggerty and a Mr. Lambert, two of the largest creditors. These three creditors had an interview with the defendants, and, upon consultation, it was considered best, for the interest of all parties, that the defendants should forthwith assign and deliver their property to their creditors in satisfaction of their debts. The suggestion of this plan came from Mr. Bliss, who drew up the form of a proposal, to be signed by the defendants, and an acceptance to be signed by their creditors. The proposal and acceptance were as follows:

" PROPOSAL.—Finding it impracticable for us, without pecuniary assistance to a large amount, to meet our obligations, about to mature, as they become due, and believing that temporary loans would produce further embarrassment, and being already indebted to one firm for money loaned to a large amount, beyond which we cannot expect them to go; we hereby propose that, in case our creditors will grant us a release, we will surrender into the hands of William G. Lambert, William C. Haggerty, and William M. Bliss, in trust for our creditors, all our stock of goods, debts due to us, whether by note or book account, and all other copartnership property, of every name and description, only reserving to ourselves the sum of $1,000 to each of us, to provide for our personal debts and to cover our personal expenses until we are enabled to make other business arrangements, the property so conveyed in trust to be disposed of as the trustees may deem most for the interest of all concerned, and the proceeds to be divided among all our creditors *pro rata*, and without preference, except for such amounts as are covered by collateral securities already pledged; and in case the property so conveyed shall be so disposed of as to produce

more than sufficient to pay to each and every creditor the amount of the respective accounts in full, then and in that case the surplus shall be divided equally between us. We make this proposal believing that our effects are much more than sufficient, if judiciously disposed of and settled, to pay all our obligations and return to us a handsome surplus. Any goods purchased by us within the last ten days, we propose to return to the sellers, and not include them in this arrangement.

"NEW YORK, February 28, 1857.

(Signed)      "GEO. F. PETERSON,

"GEO. S. HUMPHREY."

"ACCEPTANCE. — We, the undersigned, creditors of the firm of Peterson & Humphrey, of the city of New York, agree to accept the foregoing proposition, and to grant them the release they ask upon the conditions named; and the conveyance, in trust, of their property, for the purposes specified, we hereby agree shall be a release and discharge in full of their indebtedness to us.

"NEW YORK, February 28, 1857."

This acceptance was signed by fifty creditors of the defendants, among whom were the plaintiffs. There were some eight or ten of their creditors, for small amounts, as appeared from the evidence, who did not sign it.

On the 8th day of March, 1857, an assignment was signed, sealed and delivered, as follows:

"ASSIGNMENT.—Know all men by these presents, that we, George F. Peterson and George S. Humphrey, composing the firm of Peterson & Humphrey, of the city of New York, carpet dealers, having been unable to meet our obligations in full as they became due, and being desirous to have our effects applied for the equal benefit of all our creditors, in consideration of one dollar to each of us in hand paid, and of the trusts herein contained, have granted, assigned, transferred and set over, and do hereby grant, assign, transfer and set over unto William G. Lambert, William C. Haggerty

and William M. Bliss of said city, merchants, all our partnership property and effects, whatsoever and wheresover, real and personal, including cash on hand, stock in trade, store, fixtures and furniture, the lease of store No. 524 Broadway, and all notes, bills, accounts, and balances of account, and other choses in action, owing or in any wise belonging to us—excepting and reserving by consent of the creditors heretofore given, $1,000 to the said Peterson, and $1,000 to said Humphrey, to be paid them by said trustees out of the trust funds in sums and at times, at the discretion of the trustees. To have and to hold unto the said Lambert, Haggerty and Bliss, the survivor and survivors of them, and assigns forever, upon trust nevertheless, and to and for the uses following, namely: To convert the same into cash without unnecessary delay, and to apply the proceeds thereof, after paying the lawful expenses of the trust hereby created, to the payment of all the debts of our said firm in equal ratable proportion, until the same shall be paid in full, or as far as said proceeds will go. And if any surplus shall remain after payment in full of the said partnership debts, then to pay the same, so far as the interest of the said Peterson therein goes, to the creditors of said Peterson in equal ratable proportion until paid in full, and the surplus thereafter, if any, to the said Peterson; and as to the share of said Humphrey in the surplus, after paying the said partnership debts, to pay the same to the creditors of the said Humphrey, an equal ratable proportion until paid in full, and the surplus to said Humphrey.

"A schedule of all the property and effects above referred to, and hereby conveyed, and also a schedule of all the debts of said firm, shall be prepared without delay, and annexed to this assignment.

"And the said Peterson & Humphrey hereby constitute the said Lambert, Haggerty and Bliss their true and lawful attorneys, to take all lawful ways and means, in their name or otherwise, to recover, realize and collect, all and every part of the premises hereby conveyed; and they hereby covenant with said Lambert, Haggerty and Bliss to make and

execute any and all further assurances, conveyances or other instruments which may reasonably be required for the more complete transfer of the premises or any part thereof, and duly acknowledge or otherwise verify the same.

" The intention of the foregoing provisions is, that any dividend under this assignment shall not apply to such amounts as are covered by collateral securities already pledged, but only to the balances not realized from such collateral securities.

" And the said William G. Lambert, William C. Haggerty and William M. Bliss, hereby accept the trusts above contained, and agree to discharge the same to the best of their ability.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, the seventh day of March, in the year eighteen hundred and fifty-seven.

(Signed)            "GEO. F. PETERSON,   [L. S.]
                    "GEO. S. HUMPHREY,   [L. S.]
                    "WM. G. LAMBERT,     [L. S.]
                    "WM. C. HAGGERTY,    [L. S.]
                    "WM. M. BLISS.       [L. S.]

"Sealed and delivered in presence of

" JOHN CROPLEY, Jr., as to all but Mr. Lambert,

" W. M. PRITCHARD, as to all."

Upon the execution of this deed, the trustees named therein took possession of the assigned property, converted the same into cash, and distributed the proceeds among the creditors generally. The proceeds were some $26,000, enough to pay thirty cents on the dollar to the creditors. The plaintiffs held the note in suit for $1,000 against the defendants; and although they signed the acceptance of the proposal, refused to accept a dividend under the assignment, claiming that it was a fraud, and finally brought this action directly upon their note.

On proving the foregoing facts, the defendants rested, when the counsel for the plaintiffs moved for judgment on the pleadings and evidence, upon the grounds:

1. That there was no proof of a signing of the acceptance by all the creditors.

2. That there was no proof of any transfer or assignment of the property in accordance with the terms and conditions of the proposal and acceptance.

3. That the assignment proved was fraudulent and void on its face.

4. That there was no proof of a sufficiency of assets or property to pay the debts in full.

5. That no explanation is given concerning, or proof offered to justify the defendants in representing in their proposal the belief that their assets would pay their creditors in full, and leave them a handsome surplus.

6. That there was no proof of a release under seal, or upon sufficient consideration.

7. That the court was bound, on the evidence as it stood, to pronounce the alleged release to be fraudulent, and that the plaintiffs were not bound by their signature to the acceptances.

8. That the defendants had not made out a defense.

The court denied the motion, and the plaintiffs excepted.

The plaintiffs then gave evidence for the purpose of showing that, in making of the agreement, the defendants had been guilty of a fraud upon the plaintiffs, by procuring their assent to the agreement, upon false representions as to the value of their property, and the amount which would be realized under the assignment. On this question of fraud, counter-evidence was also given by the defendants. This question was submitted to the jury, under the instructions of the court, and they found for the defendants.

At the close of the testimony, the plaintiffs renewed their motion for judgment, which was refused, and there was an exception.

The judge, in charging the jury, after stating that the action was brought on a promissory note; that the defendants admitted the making of the note; and that, if that was all in the case, the plaintiffs would be entitled to a verdict, proceeded as follows: " But the defendants introduce in evi-

dence two writings. The first is signed by themselves, in which they propose that, if their creditors will release them, they will surrender all their property to three persons, naming them, to be sold, and the proceeds divided equally among their creditors, except a thousand dollars to each of the defendants, to pay some grocery bills, and other indebtedness, and reserving to those who have collateral securities the benefit of those securities. Annexed to that paper is an agreement, on the part of the plaintiffs, and other creditors, to accept that proposition; and thus they promise that if the defendants will make an assignment of all their goods to those three persons, in trust for their creditors, as therein proposed, that this paper shall be a release and discharge of their full indebtedness to these plaintiffs; and then the defendants prove an assignment of all their property and effects to these three persons; and, further, that these three persons went into possession of their store, and took their books of account. That, as I suppose, is a question of law, which makes the case for the defendants. If I am in error, the plaintiffs take their exception. I suppose that that assignment operates as a release and discharge of this note." To this the plaintiffs' counsel excepted.

The jury found a verdict for the defendants, upon which judgment was entered; and, on appeal to the General Term, the judgment was affirmed. The plaintiffs appeal to this court.

*S. Hand*, for the plaintiffs.

*James C. Carter*, for the defendants.

WRIGHT, J. The question whether the alleged compromise or release from their creditors was procured by the defendants' fraud, was, under proper instructions, as I think, submitted to the jury; and they by their verdict negatived the existence of any fraud in the transaction. Fraud, therefore, being out of the way, the sole point is, whether the matters allged in the defendants' answer, and proved on the trial, were a defense to the action.

The transaction, as alleged and proved, was, in substance, this: "In the latter part of February, 1857, the defendants were copartners in business, and in an insolvent condition, and unable to pay their debts as they matured. Their indebtedness was to the extent of some $80,000, and their assets consisted of a stock of goods in store and a large amount of book accounts, the real value of both of which was quite uncertain. They disclosed the condition of the firm to three of their principal creditors, and, upon consultation with their creditors, it was deemed best for all parties that the defendants should forthwith assign and deliver their property to their creditors in satisfaction of their debts.

The suggestion of this plan came from one of the consulting creditors, who drew up the form of a proposal to be signed by the defendants, and an acceptance to be signed by their creditors. The proposal, as signed by the defendants (after citing the embarrassed condition of copartnership affairs), was in this form: "We hereby propose that in case our creditors will grant us a release, we will surrender into the hands of William G. Lambert, William C. Haggarty and William M. Bliss, in trust for our creditors, all our stock of goods, debts due to us, whether by note or book account, and all other copartnership property of every name and description, only reserving to ourselves the sum of $1,000, to each of us, to provide for our personal debts and to cover our personal expenses, until we are enabled to make other business arrangements, the property so conveyed in trust to be disposed of as the trustees may deem most for the interest of all concerned, and the proceeds to be divided among all our creditors *pro rata*, and without preference, except for such amounts as are covered by collateral securities already pledged." The acceptance, which was signed by the plaintiffs and some fifty other creditors of the firm (some eight or ten, for small amounts, as it appeared in evidence, not signing it), was as follows: "We, the undersigned, creditors of the firm of Peterson & Humphrey, of the city of New York, agree to accept the foregoing proposition, and to grant them the release they ask upon the conditions named; and the conveyance in trust

of their property for the purposes specified, we hereby agree shall be a release and discharge in full of their indebtedness to us." On the 7th of March following, the defendants executed an assignment to William G. Lambert, William C. Haggarty and William M. Bliss (the persons named in the proposal), of "all their partnership property and effects, whatsoever and wheresoever, real and personal, including cash on hand, stock in trade, store fixtures and furniture, the lease of store No. 524 Broadway, and all notes, bills, accounts, and balances of account, and other choses in action, owing or in any way belonging to them, excepting and reserving, by consent of the creditors heretofore given, one thousand dollars to said Peterson, and one thousand dollars to said Humphrey, to be paid them by the said trustees out of the trust funds, in sums and at times at the discretion of the trustees. To have and to hold unto the said Lambert, Haggerty and Bliss, the survivors and the survivor of them, and assigns, forever, upon trust nevertheless, and to and for the uses following, namely: To convert the same into cash without unnecessary delay, and to apply the proceeds thereof, after paying the lawful expenses of the trust hereby created, to the payment of all the debts of our said firm in equal ratable proportion, until the same shall be paid in full, or, as far as said proceeds will go." Upon the execution and delivery of the deed of assignment, the trustees named therein took possession of all the assigned property and executed the trusts therein contained.

I am of the opinion that the transaction was good as an accord and satisfaction. The defendants were in an insolvent condition, and unable to meet their debts as they matured, but had a large amount of property on hand of uncertain value. Under these circumstances an agreement was entered into between them and certain of their creditors, among whom were the plaintiffs, whereby the said creditors, in consideration that the defendants would transfer, surrender and convey to three persons named as trustees, all their copartnership property of every name and description (except the sum of $1,000 to each of the defendants to provide for their personal

debts), in trust, that the said trustees should dispose of the same as they should deem most for the interest of all concerned, and dispose of the proceeds of the property so as to be conveyed equally among all the creditors of the defendants, without preference, except for such amounts as were covered by collateral securities already pledged, agreed to release and discharge the defendants from all and every debt or indebtedness due and owing, or about to be due and owing, from the defendants to them respectively. The defendants fully performed the agreement on their part, by making the assignment to the persons named, and actually putting the property in the possession of the trustees.

This was a valid agreement or accord as between the parties to it. But it is claimed to have been an accord executory merely. The future transfer by the defendants to the assignees, it is said, is what the plaintiffs agreed to receive in satisfaction of their claims, and this assignment they must *accept* to make it a good accord and satisfaction. That until then, all the defendants have proved is a mere executory agreement upon the part of the plaintiffs, not followed by any act of acceptance of the satisfaction tendered by the plaintiffs. I am not prepared to adopt this view. On the contrary, I think the true view of the transaction is, that before the agreement was executed by the making of an assignment, the assignment was in the nature of a composition. After being executed by the making of the assignment and the delivery of the property, it was a full accord and satisfaction. The true rule in respect to accord and satisfaction is, that when the debtor has done all that the creditor has agreed to accept in satisfaction of the pre-existing obligation, the accord is sufficiently executed.

I am for affirmance of the judgment.

All the judges concurring,

Judgment affirmed.